309 A.2d 325 (1973)
STATE of Maine
v.
Kevin H. VICKERS.
Supreme Judicial Court of Maine.
September 11, 1973.
*325 David M. Cox, County Atty., Bangor, for plaintiff.
Thompson, Willard, Smith & McNaboe, by U. Charles Remmel, II, Portland, for defendant.
Before DUFRESNE, C. J., and POMEROY, WERNICK, and ARCHIBALD, JJ.
DUFRESNE, Chief Justice.
On August 2, 1971 Kevin H. Vickers had given the police and the prosecuting attorney for the County of Penobscot a statement, which was taken down stenographically by an official court reporter, in which he related his participation, and the involvement of Alton Phinney and Rodney Warren, in an alleged conspiracy to commit a criminal offense under the laws of the State of Maine. At the first trial of Phinney and Warren in October, 1971 Vickers was granted immunity pursuant to 15 M.R.S.A. § 1314-A,[1] all the statutory requirements applicable thereto being satisfied. When called to testify in the course of that trial, Vickers refused on the ground that his testimony might incriminate him. Although advised of the grant of immunity, the extent thereof and the consequences to which refusal to answer would subject him, Vickers elected to stand by his initial decision not to testify. He was cited for, and found guilty of, contempt, and on October 15, 1971, the then presiding Justice sentenced him to pay a fine of five hundred ($500.00) dollars which he did. This first trial of Phinney and Warren aborted in a mistrial.
In January, 1972 the conspiracy charge against Phinney and Warren was retried before another jury with another Superior Court Justice presiding. Vickers was called to testify and again he refused on the ground that his answers might incriminate him. Vickers was represented by counsel. After explaining to the appellant that he had been granted immunity as to "any and all matters or possible crimes or offenses which he could have possibly committed, irrespective of whether it involves Mr. Phinney or Mr. Warren or anyone else," the Court then warned Vickers that, *326 if he refused to testify, he subjected himself to a citation for contempt and possible imprisonment as a result thereof. Vickers disregarded the Court's order to answer the questions and, notwithstanding his asserted understanding of the grant of immunity and the scope thereof, he persisted in his refusal on the ground that it might incriminate him. Cited for contempt and found guilty, Vickers was sentenced to serve five (5) months in the county jail. He appeals. We deny the appeal.

1. Constitutional privilege against self-incriminationimmunity

At the initial stage of this appeal, the appellant questioned the procedure whereby the Court below granted immunity. It was said that the stenographic record of Vickers' potential testimony, which originally had been attached to the motion requesting the grant of immunity and incorporated therein by reference, had become detached from, and was not a part of, the process at the time of the hearing and decision on the motion. On remand for supplemental hearing, pending appeal, to determine the facts, it was found, and the appellant does not further dispute it, that Vickers' statement, originally a part and parcel of the motion for the grant of immunity, was still annexed thereto at the time of the hearing and decision on the motion. The Court expressly found that it became detached later by clerical error in the Clerk's office. At oral argument, counsel for the appellant indicated that he was not pressing his original point to the effect that, because of the absence from the motion of Vickers' expected testimony, the immunity statute, as applied to him, was unconstitutional, since, without the allegedly missing insertions, he was not advised respecting the nature and scope of the area within which the immunity would operate, and thus would have the right to assert his constitutional privilege against self-incrimination for want of the necessary intelligence of the subject matter of the inquiry.
The appellant further conceded, at oral argument and in his brief, that the recent decision of the Supreme Court of the United States (Kastigar v. United States, 1972, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212) was dispositive of his claim that the Maine immunity statute (15 M.R.S.A. § 1314-A) is unconstitutional under the constitutions of the State of Maine and of the United States in that the scope of immunity granted under it is so limited as to violate the right against self-incrimination provided by those constitutions. Nothwithstanding this concession, we have considered the appellant's original contention and find it without merit.
In Gendron v. Burnham, 1951, 146 Me. 387, 82 A.2d 773, 38 A.L.R.2d 210, our Court indicated that the two constitutional provisions (Article I, Section 6, Maine Constitution; Amendment V, Constitution of the United States)[2] were so similar in nature and identical in purpose that precedent with respect to the construction of the one may well serve as precedent for the construction of the other. For our purposes, the State constitutional protection against self-incrimination is the equivalent of the Fifth Amendment. State v. Castonguay, 1968, Me., 240 A.2d 747.
The Fifth Amendment privilege against self-incrimination was made fully applicable to the States through the Fourteenth Amendment. Malloy v. Hogan, 1964, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. It secures against state invasion the right of a person to remain silent unless he *327 chooses to speak in the unfettered operation of his own will and it protects the individual against the imposition of penalties for such silence. The same standards must be used to assess the justification of an accused's silence in his exercise of the constitutional privilege against self-incrimination, whether the problem arises in a state or federal proceeding. Malloy v. Hogan, supra.
The constitutional rule was extended to state witnesses apprehensive of criminal prosecution under the federal law. In Murphy v. Waterfront Commission of New York Harbor, 1964, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678, the United States Supreme Court held
"the constitutional rule to be that a state witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled testimony and its fruits cannot be used in any manner by federal officials in connection with a criminal prosecution against him. We conclude, moreover, that in order to implement this constitutional rule and accommodate the interests of the State and Federal Governments in investigating and prosecuting crime, the Federal Government must be prohibited from making any such use of compelled testimony and its fruits."
In short, the constitutional privilege, said the Murphy Court protects a state witness against incrimination under federal as well as state law and a federal witness against incrimination under state as well as federal law.
In Brunswick Construction Co., Inc. v. Leonard, 1954, 149 Me. 426, 103 A.2d 115, this Court said:
". . ., construing both the Fifth Amendment to the Constitution of the United States and our own constitution, it is apparent that the privilege against self-incrimination not only applies to a case where a witness is directly charged with a crime but to a case where he may be asked to disclose the circumstances of an offense, the sources from which, or the means by which evidence of its commission or of his connection with it may be obtained `"without using his answers as direct admissions against him."'"
We recognize the interrelation between the privilege against self-incrimination and immunity statutes. Our society, organized, as it is, under dual Governments of State and Nation and subject to the mandates of State and Federal Constitutions, in order to be an orderly society under effective control, must rely upon a broad and an essential governmental power to compel residents to testify in court or before grand juries or other agencies. See Blair v. United States, 1919, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979. This power of government to compel persons to give testimonial evidence is firmly established in Anglo-American jurisprudence. Kastigar v. United States, supra. But it is not absolute and the most important exception is the exemption provided by the constitutional privilege against self-incrimination. The duty of the individual to testify concerning facts within his knowledge is always measured by his constitutional right to assert his privilege against self-incrimination. Gendron v. Burnham, supra.
Assertable in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory, the constitutional privilege against self-incrimination protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used. Kastigar v. United States, supra. See, Huot v. Gendron, 1971, Me., 284 A.2d 899.
The danger of criminal prosecution, however, must be real and based on reasonable cause. We said in Collett v. Bither, 1970, Me., 262 A.2d 353:
"And, in determining whether a real apprehension of danger exists, the judge before whom the problem is raised must *328 give the benefit of any reasonable doubt to the person claiming the privilege. It is essential, however, to proper judicial administration that the exercise of the privilege not depend upon a purely arbitrary or capricious claim of apprehension of incriminating danger made by the person refusing to answer, and it is for the court to decide whether the fear of self-incrimination entertained by the witness or party is real or imaginary, substantial in character or so improbable or unrealistic that no reasonable person would suffer it to influence his conduct."
The need for testimonial evidence in protecting society itself, especially in settings where the privilege against compulsory self-incrimination would necessarily be involved, gave rise to the enactment of immunity statutes to break the inevitable deadlock and supplant it by a reasoned accommodation between the imperatives of the privilege and the legitimate demands of government to compel citizens to testify. Indeed, in the case of many offenses the only persons capable of giving useful testimony are those implicated in the crime. These immunity statutes are essential to the effective enforcement of the criminal laws, a duty imposed primarily on the several States of our country. Cast as they were in a mold to produce a fair and equal exchange of constitutional values, these statutes were looked upon as a part of our constitutional fabric. Ullmann v. United States, 1956, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511. But, to meet constitutional requirements of the Fifth Amendment, an immunity statute must be coextensive in scope with the privilege which it is intended to displace. Kastigar v. United States, supra.
In Kastigar, however, the Court ruled that the mandate of the Fifth Amendment was satisfied, if the statute provided immunity from use and derivative use, as distinguished from transactional immunity, which affords the witness considerably broader protection than does the Fifth Amendment privilege. Since the Maine statute, 15 M.R.S.A., § 1314-A, grants to the witness transactional immunity, the appellant's refusal to testify as ordered was unjustified in law and subjected him to the penalties of contempt. His testimony could not be used, directly or indirectly, in any future criminal prosecution in any court of the land, state or federal. The rulings below were proper in law.[3]

2. Double jeopardy

The appellant next claims that he is being held to answer twice for the same crime contrary to Article 1, Section 8 of the Constitution of Maine and Amendment V of the Constitution of the United States.[4]
The appellant was convicted of two criminal contempts. We are not dealing with civil sanctions, but rather with criminal penalties. The essential ingredient of a civil contempt sanction is that the contemnor is given the opportunity to purge himself of his contempt, and such is the case when no determinate sentence is imposed or when the determinate sentence imposed is made on condition that the contemnor be released if he be willing to testify. Baker v. Eisenstadt, 1 Cir., 1972, 456 F.2d 382; Shillitani v. United States, 1966, 384 U.S. 364, 86 S.Ct. 1531, 1535, 16 L.Ed. 2d 622. See also, Cheney v. Richards, 1931, 130 Me. 288, 155 A. 642.
A continuing contumacious refusal to testify at the retrial of the same criminal action, following a previous separate and distinct refusal to do so at the first trial, does not merge with the antecedent *329 testimonial occasion to result in a single offense. Each episode constitutes a separate and distinct affront to the court and subjects the contemnor to punishment for several contempts, even though the reprehensible conduct on both occasions concerned the same subject matter. The contempts lay in asserting on two separate and discontinuous occasions the privilege against self-incrimination respecting testimony which could not incriminate the witness because of the grant of immunity coextensive with the privilege. The State in the instant case had an equal right to the testimony of Vickers on the retrial of Phinney and Warren as it did at the original trial which ended in a mistrial. The authorities uniformly hold that when a witness is asked to testify again on a subsequent occasion, the recurring refusal is a new contumacious act punishable as a separate and distinct contempt. This presents no double jeopardy problem. In Re Second Additional Grand Jury, etc., v. Cirillo, 1963, 12 N.Y.2d 206, 237 N.Y.S.2d 709, 188 N.E.2d 138; United States v. McCloskey, 2 Cir., 1966, 359 F.2d 788; In re Ward, 1940, 295 Mich. 742, 295 N.W. 483; State v. Kasherman, 1929, 177 Minn. 200, 224 N.W. 838; Ex parte Stice, 1886, 70 Cal. 51, 11 P. 459.
The appellant's case is distinguishable on its facts from cases where the prosecution tried to multiply contempts by repeated questioning on the same occasion on the same subject of inquiry within which a recalcitrant witness had already carved out the area of his refusal to answer in his assertion of the privilege against self-incrimination. In these cases, the Courts held, and properly so, that the witness was guilty of a single contempt and was not subject to multiple punishment. Yates v. United States, 1957, 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95; Baker v. Eisenstadt, supra; People v. Riela, 1960, 7 N.Y.2d 571, 200 N.Y.S.2d 43, 166 N.E.2d 840.

3. Due process

The appellant finally contends that the ruling adopted in this case is violative of due process, because of its potential abuse by State authorities. He points out that the case of Phinney and Warren is presently on appeal and, should it be remanded for a new trial, he may be faced with the same routine of having to testify again and being subjected to further punitive harassment. He adds that these series of contempt convictions for the same refusal to testify could continue ad infinitum. It may be that sentences for repeated contempts could become so numerous and oppressive as to constitute a denial of due process. We are clearly not confronted with such a situation in the present case. We shall withhold judgment on such a problem until we are faced with it.
The entry will be
Appeal denied.
WEBBER, J., sat at argument, but retired before this opinion was adopted.
WEATHERBEE, J., did not sit.
NOTES
[1] § 1314-A. Compelling evidence in criminal proceedings; immunity

"In any criminal proceeding before a court or grand jury, if a person refuses to answer questions or produce evidence of any kind on the ground that he may be incriminated thereby, and if the prosecuting attorney, in writing, and with the written approval of the Attorney General, requests the court to order that person to answer the questions or produce the evidence, and the court after notice to the witness and hearing shall so order, unless it finds to do so would be clearly contrary to the public interest, that person shall comply with the order. After complying, and if, but for this section, he would have had the right to withhold the answers given or the evidence produced by him, that person shall not be prosecuted or subjected to penalty or forfeiture for or on account of any transaction, matter or thing concerning which, in accordance with the order, he gave answer or produced evidence. Failure to answer questions or produce evidence as ordered by the court following notice and hearing shall constitute contempt of court. He may nevertheless be prosecuted or subjected to penalty or forfeiture for any perjury, false swearing or contempt committed in answering, or failing to answer, or in producing or failing to produce evidence, in accordance with the order." (Emphasis supplied).
[2] [Constitution of Maine]

Article I, § 6. Rights of persons accused Section 6. "In all criminal prosecutions, the accused shall have a right to be heard. . .;
. . . He shall not be compelled to furnish or give evidence against himself, . . ."
[Constitution of the United States]
Amendment V. Capital crimes; double jeopardy; self-incrimination; . . .
"No person shall be held to answer . . .; nor shall be compelled in any criminal case to be a witness against himself . . ."
[3] We take notice that the rule respecting immunity is of constitutional dimension and not merely one of comity as indicated in State v. Verecker, 1924, 124 Me. 178, 126 A. 827.
[4] Article 1, § 8. No double jeopardy

Section 8. "No person, for the same offence, shall be twice put in jeopardy of life or limb." Amendment V. Capital crimes; double jeopardy; self-incrimination; due process; just compensation for property
"No person shall be held to answer . . .; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; . . ."