**1997 ME 144**

## STATE of Maine and Securities Administrator

v.

## Paul RICHARD, et al.

Supreme Judicial Court of Maine.

Argued June 16, 1997.

Decided July 1, 1997.

---

Andrew Ketterer, Attorney General, Peter J. Brann (orally), Linda J. Conti, Asst. Attys. Gen., Augusta, for plaintiff.

Leonard I. Sharon (orally), Sharon, Leary & DeTroy, Auburn, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, RUDMAN, and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1] Paul Richard [1] appeals from the judgment of the Superior Court (Kennebec County, *Marden, J.*) finding him in contempt of orders entered in May (*Atwood, J.*) and August 1996 (*Calkins, J.*), and incarcerating him until he submits an accounting of his sales of certain securities. Richard contends that the court erred by determining that he waived his right to assert his privilege against self-incrimination, U.S. Const. amends. V, XIV, in response to its orders that he provide an accounting, and that the court abused its discretion by finding him in contempt of those orders. We disagree and affirm the judgment.

## I.

[¶ 2] In March 1996 the State filed a nine-count civil complaint alleging violations of the Revised Maine Securities Act, 32 M.R.S.A. §§ 10101–10713 (1988 & Supp.1996), against HER, Inc., Paul Richard, Steven A. Hall, and David J. Hall. The only party to this appeal is Richard, who was charged with offering and selling securities within Maine that were neither registered nor exempt from registration pursuant to section 10401 and, as a treasurer and therefore a "control person" pursuant to section 10602(3), with being sec-ondarily liable for the material misrepresentations allegedly made by the Halls, who were charged pursuant to section 10201(2).[2]

[¶ 3] The State also sought a temporary restraining order and a preliminary injunction to enjoin the defendants from selling unregistered securities. In March the court issued the temporary restraining order and set the matter for a preliminary injunction hearing. Attached to the State's preliminary injunction motion was an affidavit of the Securities Division's chief investigator stating that, before filing suit, the Division had sought a complete accounting and an assurance that the defendants would stop selling unregistered securities, and had received only an inadequate accounting and false assurances in response. On the eve of the preliminary injunction hearing, Richard informed an investor in a rescission letter that "[t]here is a possibility that I may have sold securities in violation of the Revised Maine Securities Act, including Sections 10201, 10301, 10401." Richard did not invoke his Fifth Amendment privilege against self-incrimination in response to the State's motions. After the preliminary injunction hearing, he objected to the accounting only on the ground that it was an inappropriate remedy,

---

1. HER, Inc., joined the notice of appeal filed by Richard, but did not file briefs to challenge the court's order.

2. The statutory scheme states in pertinent part:

   **Offers, sales and purchases**
   In connection with the offer, sale or purchase of any security, a person shall not, directly or indirectly:
   **1. Fraud.** Employ any device, scheme or artifice to defraud;
   **2. Untrue statements, material omissions.** Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
   **3. Deceptive practices.** Engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.
   32 M.R.S.A. § 1201.
   **Registration requirement**
   A person may not offer or sell any security in this State unless the security is registered under this Act or the security or transaction is exempt under this Act.

32 M.R.S.A. § 10401.
   **3. Liability of control persons.** In a civil action brought by the Attorney General for a violation of any provision of this Act ... every person who directly or indirectly controls another person liable for the violation, every partner, officer or director of that other person, ... is liable to the same extent as that other person, unless the person otherwise secondarily liable under this Act proves that the person did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. Any of the remedies authorized by section 10603, subsections 1 and 2 may be granted with respect to a person secondarily liable under this subsection....
32 M.R.S.A. § 10602.
   **Criminal penalties**
   **1. Knowing violation.** Notwithstanding Title 17-A, a person may be fined not more than $5,000 or imprisoned for not more than 5 years, or both, upon conviction, if that person knowingly violates:
   **A.** Any provision of this Act except section 10204; ...
32 M.R.S.A. § 10604.

without mentioning his Fifth Amendment rights.

[¶ 4] In May the court issued the preliminary injunction, finding that Richard and the other defendants had violated and were continuing to violate 32 M.R.S.A. § 10401 by selling unregistered securities. The court ordered each of the defendants to produce within ten days an accounting identifying the amounts, location and nature of all the proceeds of all sales of notes or other evidences of indebtedness issued by HER, Inc., and/or by Paul Richard (and all assets derived from those proceeds[) ]; and, by name, address and telephone number, all known investors in notes or other evidences of indebtedness issued by HER, Inc., and/or Paul Richard, the date upon which each investment was made, the amount invested by each investor and the total amount of principal owed to each investor. In June 1996 the State filed its first motion for civil contempt in response to the defendants' failure to submit such accountings within the court's deadline. At the motion hearing in August, Richard agreed to provide the accounting within ten days, and the court ordered him to do so. In September, in his capacity as treasurer of HER, Inc., Richard submitted an accounting, which he failed to supplement after the State notified him of its inadequacy. In December the State filed a renewed motion for civil contempt contending that the accounting filed by Richard was "vague" and "incomplete," with "hundreds of thousands of dollars [of transactions] unaccounted for." In his objection, Richard raised for the first time his Fifth Amendment privilege against self-incrimination and requested a hearing to determine his right to assert the privilege and thereby declined to provide the accounting.

[¶ 5] Prior to and at the hearing in January on the State's motion, Richard requested that the court take testimony before making a determination of the validity of his Fifth Amendment privilege. The court declined to do so. In February the court found Richard in contempt of both the preliminary injunction issued in May and the follow-up order issued in August, and ordered him committed to the Kennebec County jail until he submitted a complete accounting.

[¶ 6] Richard filed a motion to alter the judgment, arguing that he was entitled to an evidentiary hearing before a contempt order issued, and for a stay pending that hearing. The court granted the stay and held a hearing to determine whether Richard had the right to invoke his Fifth Amendment privilege. At the hearing Richard presented evidence allegedly showing that a series of events subsequent to September 1996 demonstrated that the State intended to prosecute him for criminal wrongdoing pursuant to section 10604(1) of the Act, thereby creating in him for the first time reasonable apprehension of criminal prosecution warranting his assertion of his Fifth Amendment rights in response to the State's December motion for contempt.

[¶ 7] In March the court issued an order finding that Richard had failed to establish a valid objection pursuant to the Fifth Amendment, that he had not asserted the privilege in good faith because he "continues to engage in [the activities which have been specifically enjoined]," that he had been willing to submit an incomplete accounting thereby "disclosing some transactions and not others," that none of the State's statements or activities altered the possibility pursuant to the "circumstances of the allegations of the complaint and all of its implications" that he would be subject to a criminal prosecution, that he had waived his Fifth Amendment rights "on at least two occasions," and that he would be incarcerated as of April 15, 1997 and remain so until he produced "the accounting ordered in the preliminary injunction."

[¶ 8] Richard filed an appeal of the contempt order with us, and filed a motion in the Superior Court for a stay pending the appeal, arguing that although the accounting he submitted may not have been "complete," there had been no hearing to determine whether the accounting was inadequate. After an evidentiary hearing in April 1997, the court found that the accounting produced, although signed by Richard, was insufficient as to his individual activities. The court also ruled that Richard's conduct otherwise had been contumacious, denied his motion for a stay

pending appeal, and ordered him incarcerated until he produced an adequate accounting. Richard's subsequent motion to us for a stay pending appeal was denied, although he was granted an expedited schedule for the briefing and hearing of this matter.

## II.

[¶ 9] When application of the final judgment rule would not further its purpose, we have not hesitated to apply the "few, narrow and well-defined" exceptions to that rule. *Department of Human Servs. v. Lowatchie,* 569 A.2d 197, 199 (Me.1990). In this instance, when a failure to review the court's contempt order would both "preclude any effective review" and "result in irreparable injury," we review the court's contempt order pursuant to the "death knell" exception to the final judgment rule. *State v. Maine State Employees Assoc.,* 482 A.2d 461, 463–64 (Me.1984).

## III.

[¶ 10] We review a court's civil contempt order for an abuse of discretion, and the underlying factual determinations for clear error. *Weiss v. Brown,* 1997 ME 57, ¶ 7, 691 A.2d 1208; *McKinley v. McKinley,* 651 A.2d 821, 824 (Me.1994). A court's finding is clearly erroneous only if there is no competent evidence in the record to support it. *Zink v. Zink,* 687 A.2d 229, 232 (Me. 1996).

[¶ 11] The Fifth Amendment to the United States Constitution declares in part that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." That "guarantee against testimonial compulsion," *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951), is applicable to the states through the Fourteenth Amendment, *Malloy v. Hogan,* 378 U.S. 1, 6, 84 S.Ct. 1489, 1492, 12 L.Ed.2d 653 (1964). The Fifth Amendment privilege "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory," *Kastigar v. United States,* 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972), and applies to the compelled preparation of incriminating documents, *United States v. Doe,* 465 U.S. 605, 610–11, 104 S.Ct. 1237, 1240–42, 79 L.Ed.2d 552 (1984). The privilege "not only extends to answers that would in themselves support a conviction ... but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant." 341 U.S. at 486, 71 S.Ct. at 818 (citation omitted); see also *State v. Linscott,* 521 A.2d 701, 703 (Me.1987) (whether criminal investigation has commenced is irrelevant to claim of Fifth Amendment privilege). This protection, however, is confined to instances in which there is reasonable cause to apprehend such danger from a direct answer. 341 U.S. at 486, 71 S.Ct. at 818; *Collett v. Bither,* 262 A.2d 353, 358 (Me.1970). For a court to sustain a claim of the privilege against self-incrimination,

it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because the injurious disclosure could result. The trial judge in appraising the claim, must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.

341 U.S. at 486–87, 71 S.Ct. at 818 (quotation omitted) (quoted in *State v. Robbins,* 318 A.2d 51, 56–57 (Me.1974)). The privilege must be asserted in good faith. *Hinds v. John Hancock Mutual Life Ins. Co.,* 155 Me. 349, 375, 155 A.2d 721, 736 (1959).

[¶ 12] The Fifth Amendment privilege against self-incrimination is to be "accorded liberal construction in favor of the right it was intended to secure." *Hoffman,* 341 U.S. at 486, 71 S.Ct. at 818. However, "the great constitutional safeguard against self-incrimination was never intended to be used as a means of avoiding disclosure of the truth by [those] who only pretend a fear of proving themselves guilty of a crime," *Robbins,* 318 A.2d at 59 (citing *Hinds,* 155 Me. at 372, 155 A.2d at 734), nor to serve as an obstacle to litigation's truth-seeking function when there is no real specter of criminal prosecution and therefore of self-incrimination. Such abuses are controlled by the law

of waiver. The privilege is not ordinarily self-executing, it must be affirmatively claimed when self-incrimination is threatened, and a defendant may lose its benefit inadvertently, without making a knowing and intelligent waiver, simply by failing to invoke it. *Minnesota v. Murphy,* 465 U.S. 420, 427–28, 104 S.Ct. 1136, 1142–43, 79 L.Ed.2d 409 (1984) (quotation omitted); cf. *Colorado v. Spring,* 479 U.S. 564, 572–73, 107 S.Ct. 851, 856–57, 93 L.Ed.2d 954 (1987) (in custodial interrogation context Fifth Amendment waiver must be knowing, intelligent, and voluntary). The general obligation to appear and answer questions truthfully does not in itself convert a defendant's or witness's otherwise voluntary statements into compelled ones within the meaning of the Fifth Amendment, and "the incriminating nature of a question, by itself, [does not excuse] a timely assertion of the privilege." *Murphy,* 465 U.S. at 427–28, 104 S.Ct. at 1142 (collecting cases involving variety of criminal and noncriminal investigations in which this principle has been applied).[3] "[I]f a witness chooses to answer, his choice is considered to be voluntary since he was free to claim the privilege and would suffer no penalty as the result of his decision to do so," *id.* at 429, 104 S.Ct. at 1143; he will not be in a position later to complain that he was compelled to give testimony against himself, *United States v. Kordel,* 397 U.S. 1, 10, 90 S.Ct. 763, 768, 25 L.Ed.2d 1 (1970).

[¶ 13] Pursuant to the standards just discussed, and because it is supported by competent evidence in the record, the court's determination that Richard had waived his Fifth Amendment privilege against self-incrimination was not clearly erroneous. In its March 1997 order the court asserted that Richard had "waived his right to the privilege of the Fifth Amendment on at least two occasions...." Given the facts as set forth by the court, we treat this as a finding that Richard first waived his Fifth Amendment rights when he failed to invoke them in response to the State's requests for an order to provide an accounting, made in its simultaneous motions for a temporary restraining order and a preliminary injunction filed in March 1996.[4] Richard's argument that he could not have invoked the privilege because he had no reasonable apprehension at that juncture that his submission of an accounting could lead to a criminal prosecution is not persuasive.

[¶ 14] First, Richard was sued directly for selling unregistered securities. Both the affidavit of the Securities Division's chief investigator filed in support of the motion for a temporary restraining order, and the preliminary injunction hearing testimony, indicate that months before filing its complaint the State had notified Richard that he had violated the Revised Maine Securities Act and warned him repeatedly to stop selling unregistered securities. The evidence indicates he did not heed that warning. The Act's criminal penalties apply to any knowing violation of its provisions, 32 M.R.S.A. § 10604(1), including that which prohibits the sale of unregistered securities, 32 M.R.S.A. § 10201. The accounting sought by the State required

---

3. The well-known exception for suspects questioned in police custody—whose waiver must be knowing, intelligent, and voluntary pursuant to a *Miranda* warning—is premised on the understanding that "custodial interrogation [is] ordinarily conducted by officers who are acutely aware of the potentially incriminatory nature of the disclosures sought, [and that] the custodial setting [contains] inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Minnesota v. Murphy,* 465 U.S. 420, 429–30, 104 S.Ct. 1136, 1143, 79 L.Ed.2d 409 (1984) (quotations omitted). We have recognized one other exception. See *State v. Castonguay,* 240 A.2d 747, 751–53 (Me.1968) (compelled disclosure made by defendant to federal judge in sentencing on previous federal guilty plea for robbery cannot be used against defendant in subsequent state prosecution for same robbery).

4. The second occasion would have involved the August 1996 order, which was predicated on Richard's agreement at the hearing to provide an accounting within ten days. The court, however, does not specify whether waiver occurred in that circumstance by virtue of Richard's agreement at the hearing to supply an accounting (and therefore his failure to refuse then on Fifth Amendment grounds) or due to his submission of a purported accounting in September 1996. Moreover, and despite its reference in the March 1997 order to Richard's having "previously waived the privilege on *multiple* occasions" (emphasis added), the court does not specify the other instances in which Richard may have waived his Fifth Amendment rights.

Richard to submit information concerning his securities sales and the disposition of the proceeds of those sales, information relevant to the very securities provisions he was alleged to have violated. Thus, by the time of the preliminary injunction hearing it would have been reasonable for Richard to apprehend that his submission of the accounting "would furnish a link in the chain of evidence needed to prosecute the claimant for a ... crime." [5] *Hoffman,* 341 U.S. at 486, 71 S.Ct. at 818 (citation omitted). Richard therefore waived his Fifth Amendment privilege by failing to raise it in objection to the accounting when first sought by the State. *Murphy,* 465 U.S. at 427–28, 104 S.Ct. at 1142–43.

[¶ 15] In addition, Richard was sued indirectly for securities fraud as a "control person" of HER, Inc., who is liable for such violations of the Act unless he "proves that [he] did not know, and in the exercise of reasonable care could not have known, of the existence of the facts" concerning the corporation's alleged securities fraud. 32 M.R.S.A. § 10602(3). As noted, in a rescission letter written on the eve of the preliminary injunction hearing, Richard informed an investor that "[t]here is a possibility that I may have sold securities in violation of the Revised Maine Securities Act, including Sections 10201, 10301, 10401." This letter demonstrates Richard's acknowledgment even prior to the hearing that he might have violated the fraud provisions of the Act, 32 M.R.S.A. § 10201, and it reflects an awareness of the statutory scheme as a whole. Richard should also have been aware of his potential liability for fraud given the evidence the State introduced at the preliminary injunction hearing concerning the fraudulent activities of two other defendants, which nearly mirrored that introduced against Richard at subsequent hearings.

[¶ 16] Moreover, Richard cannot properly invoke his Fifth Amendment privilege for the first time in response to a motion for contempt, much less in response to a second such motion. See *United States v. Rylander,* 460 U.S. 752, 757, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983) (defendant in a contempt proceeding cannot raise for first time a defense that could have been raised during prior enforcement proceeding); *United States v. Bodwell,* 66 F.3d 1000, 1001 (9th Cir.1995) (per curiam) (whether defendant was properly precluded from raising Fifth Amendment claim in contempt proceedings turns on whether the claim could have been properly litigated earlier); *S.E.C. v. Oxford Capital Securities, Inc.,* 794 F.Supp. 104, 108 (S.D.N.Y.1992) (defendants cannot raise a Fifth Amendment defense to production of accounting for the first time in a contempt proceeding). Evaluating a claim of privilege at the contempt stage necessarily involves an impermissible retrial of the merits of the underlying order. See *Maggio v. Zeitz,* 333 U.S. 56, 69, 68 S.Ct. 401, 408, 92 L.Ed. 476 (1948) ("[A] contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy. The procedure to enforce a court's order commanding or forbidding an act should not be so inconclusive as to foster experimentation with disobedience.").

[¶ 17] Richard also contends that the court abused its discretion by finding him in contempt of its prior orders mandating an accounting. His argument relies entirely on the alleged erroneousness of the court's underlying factual determination that he had waived his Fifth Amendment privilege. See *Wells v. State,* 474 A.2d 846, 851 (Me.1984) (inherent in definition of civil contempt is an ability to comply with the court's order as well as a contumacious refusal to do so). Because the record supports the court's finding that waiver had occurred, as well as its finding that Richard's refusals to comply with the court's orders were contumacious in other respects, the court properly exercised

**5.** Moreover, at the March 1997 hearing Richard's counsel conceded that even as early as the allegations made here in the complaint—[the State is] right.... Mr. Richard could have been criminally liable for selling a document that was a security that was unregistered. That's true. So then maybe he should have known that any questions involving the sale of securities-documents that were securities but unregistered left him open to criminal liability. That's what the pleadings say.

its discretion by finding him in contempt. *See Weiss,* 1997 ME 57, ¶ 7, 691 A.2d 1208 (when the record discloses no clear error in the underlying factual findings, we review judgment of contempt for an abuse of discretion).

The entry is:

Judgment affirmed.

