BARNES, J., for the Court:
¶ 1. In 2000, the Rankin County Chancery Court appointed attorney Jason Ze-bert guardian over the person and estate of Thomas E. Baker. Zebert posted a bond for $85,000. From 2000 to 2008, Zebert provided the chancery court with required yearly accountings, which the court approved. However, in early 2009, Zebert failed to provide the chancery court with the eighth accounting (for the period beginning October 1, 2007, and ending September 30, 2008). An order to show cause for the past-due accounting was issued by Chancellor John Grant III on April 8, 2009. The order required Zebert to appear before the court on June 1, 2009. Several continuances (in response to Ze-bert’s motions) were granted throughout the next year. In one of the motions for a continuance, Zebert asked to be replaced as guardian. Harry Rosenthal was appointed guardian over Baker and his estate on September 2, 2009.
¶ 2. On October 4, 2010, two years after the accounting was due, Zebert filed a “Petition Exhibiting Eighth Accounting of Estate.” However, the petition only covered the period from October 1, 2007, to December 31, 2007. For the next several months, three more continuances for the “show cause” hearing were entered. On June 27, 2011, Judge Grant issued another show-cause order, requiring Zebert to appear for a hearing on July 26, 2011. After the hearing, Judge Grant found that the proper annual accounting had not been filed and approved. In his order dated July 26, 2011, Judge Grant found Zebert in contempt and ordered him to be incarcerated; the chancellor suspended the incarceration, however, until August 4, 2011, to allow Zebert time to “fil[e] and hav[e] approved all annual aceounting(s) that are past due in this eause[.]”
¶ 3. Zebert subsequently filed a motion for the recusal of Judge Grant. On August 4, 2011, Judge Grant once again stayed Zebert’s incarceration, this time until September 8, 2011, to allow Zebert and his counsel “additional time in which to prepare and present to the Court past due annual accountings that have not been properly filed or approved.” A few days later, on August 8, Judge Grant recused himself, appointing the Honorable Dan Fairly to hear the matter. The order also sealed the prior orders of contempt (July 26, 2011; August 4, 2011) and the current August 8, 2011 order from public viewing until further order of the chancery court.
¶ 4. On September 8, 2011, Zebert filed another accounting “for the period beginning October 1, 2007, and ending July 27, 2011.” It was in this accounting that Ze-bert noted that he had made “disbursements of $44,468.83 and $133,749.92 in loans extended on behalf of the Estate.” It was also noted that at the beginning of the accounting period, Baker’s account at First Commercial Bank held $164,909.93; at the end of the accounting period, the account only held $6,555.50. Attached as exhibits to the petition for accounting were spreadsheets of the account’s income/expenses for this period. A short hearing *974 was held before Judge Fairly, who ordered Zebert to provide all outstanding bank statements for Baker’s account. Zebert told the chancellor that all remaining documentation would be available by September 19.
¶ 5. Yet, on that date, Zebert still had not provided bank statements, but merely copies of the checks for the vouchers. Consequently, Judge Fairly found Zebert in contempt for failure to present an acceptable accounting and fined him $1,500. The chancellor also continued “all other matters in this cause, including but not limited to the other findings of contempt and incarceration” until the next hearing on October 3, 2011, at which time the chancery court “expect[ed]” Zebert to produce bank statements and copies of can-celled checks. In a supplement to the accounting, filed that same day, Zebert explained that without obtaining the chancery court’s approval, he had disbursed funds totaling $133,749.92 from Baker’s estate for three different loans, all at five percent interest: (1) $75,000 to Sherri Baggett and Jimmie Susan Fowler from January 2008 to January 15, 2012;[1] (2) $37,000 to Fowler, payable January 15, 2012; and (3) $21,749.92 “made/advanced” to Fowler, payable January 15, 2012. Fowler was Zebert’s employee; Baggett was a female acquaintance of Zebert’s. As already noted, these disbursed funds reduced the assets of the estate from approximately $165,000 to $6,555.50.[2] The supplement also stated that the loans were secured by an interest in land located in Rankin County, Mississippi, with a value in excess of $350,000. However, although a description of the property was attached, there was no deed of trust for the property provided with the supplemental accounting.
¶ 6. Another show-cause hearing was held on July 18, 2012. At that hearing, Zebert was questioned about the unapproved disbursements from the estate, which he claimed involved loans to an employee and a female acquaintance. Zebert confessed he had not obtained approval from the court to make the disbursements. He also claimed that documentation regarding the disbursements had been inadvertently destroyed by water damage to his office during a storm.[3]
¶ 7. Judge Fairly found Zebert in civil contempt. He ordered Zebert to jail “until he purges himself of such contempt.” Ze-bert, who is still incarcerated, appeals the order, claiming that the order of contempt was criminal in nature, rather than civil, and must be reversed since it is impossible for him to comply with the chancery court’s order.[4] Finding no error, we affirm.
*975 STANDARD OF REVIEW
¶ 8. A chancellor’s finding of contempt is reviewed for manifest error. Jones v. Mayo, 53 So.3d 832, 838 (¶ 21) (Miss.Ct.App.2011).
The decision to hold a person or entity in criminal or civil contempt ... is a discretionary function of the [chancery] court. Issues of contempt are questions of law to be decided on a case-by-case basis. Regarding a determination of contempt, a [chancery] court due to its temporal and physical proximity to the parties is infinitely more competent to decide the matter.
Corporate Mgmt. Inc. v. Greene Cnty., 23 So.3d 454, 466 (¶ 32) (Miss.2009) (internal citations and quotations omitted).
DISCUSSION
I. Whether the order of contempt issued by the chancellor was civil or criminal in nature.
¶ 9. At the hearing on July 18, 2012, Judge Fairly found Zebert to be in civil contempt “by clear and convincing evidence.” The chancellor summarized:
You have woefully failed to properly account to this court, Mr. Zebert. This court has been abundantly patient with you. I can’t imagine why ... Judge Grant didn’t put you in jail [a] long time ago, because that’s where you are going today. Until you properly account to this court for every penny of this man’s money, you’re going to sit over there in the Rankin County jail.
I adjudicate you to be in willful and contumacious contempt. I’m reinstating Judge Grant’s Order incarcerating you; and you’re going to jail, sir, until you account for every penny.
Zebert responded, “I understand what a proper accounting is, and I certainly can put that together”; however, he later questioned the chancery court as to how he could accomplish that task while incarcerated. The chancellor said that was Ze-bert’s problem to solve. The corresponding “Order of Contempt and Incarceration” stated that Zebert was “to present and have approved an accounting in this cause.” (Emphasis added).
¶ 10. “The purpose of civil contempt is to compel compliance with the court’s orders, admonitions, and instructions, while the purpose of criminal contempt is to punish.” In re McDonald, 98 So.3d 1040, 1043 (¶ 5) (Miss.2012) (quoting Graves v. State, 66 So.3d 148, 151 (¶ 11) (Miss.2011)).
The order of contempt is entered by the court for the private benefit of the offended party. Such orders, although imposing a jail sentence, classically provide for termination of the contemnor’s sentence upon purging himself of the contempt. The sentence is usually indefinite and not for a fixed term. Consequently, it is said that the contemnor “carries the key to his cell in his own pocket.”
*976 On the other hand, a criminal contempt proceeding is maintained solely and simply to vindicate the authority of the court or to punish otherwise for conduct offensive to the public in violation of an order of the court.
Jones v. Hargrove, 516 So.2d 1354, 1357 (Miss.1987) (citation omitted). A criminal-contempt penalty “[is] designed to punish the contemnor for disobedience of a court order; punishment is for past offenses and does not terminate upon compliance with the court order.” C.K.B. v. Harrison Cnty. Youth Court, 36 So.3d 1267, 1273 (¶ 16) (Miss.2010) (quoting Cooper Tire & Rubber Co. v. McGill, 890 So.2d 859, 868 (¶ 35) (Miss.2004)).
¶ 11. On appeal, Zebert claims that it is “factually and legally impossible” for him to present an approved accounting since he admittedly misappropriated funds from the estate and “perpetuated a fraud on the court.” He also says compliance with the chancery court’s order is physically impossible since, from jail, he has no access to the necessary documentation. Zebert therefore contends that since it is impossible for him to comply with the chancellor’s directive, he was subjected to “constructive” criminal contempt, which requires the chancery court to provide him with “procedural due process safeguards.” See Davis v. Davis, 17 So.3d 114, 120 (¶ 23) (Miss.Ct.App.2009). Zebert also argues that Judge Fairly should recuse himself since the record reflects that Judge Fairly had a personal bias against him.
¶ 12. Judge Fairly’s reasoning for remanding Zebert into custody was to compel compliance with his order to present a proper accounting of funds. Judge Fairly never stated during the hearing that Ze-bert had to have an approvable accounting; he said that Zebert needed to provide a “proper” accounting. However, as already noted, the order for contempt and incarceration did state that Zebert was required “to present and have approved an accounting in this matter[.]” The footnote in the order further stated:
While accountings have been presented, none have been approved by the Court. All of the presented accountings and supplements fall woefully short of the statutorily required information necessary for the Court to approve same. Vouchers, presented by Mr. Zebert after being previously ordered by the Court, showed unauthorized and unapproved expenditures made by Jason T. Zebert.
This is the basis for Zebert’s assertion that he cannot provide an accounting that would be approved, due to the misuse of funds.
¶ 13. We find no merit to Zebert’s claims that the order was criminal in nature and that he is unable to comply with the order.[5] This is not a situation *977 where Zebert owes money that he is not able to pay; he is merely being required to provide a statement of all income and disbursements to and from Baker’s trust account, together with all his paperwork related to his management of Baker’s funds from October 2007 to September 2008. Zebert even stated at the July 18, 2012 hearing that he would be glad to provide “whatever information, documentation, or accounting the court wishes to be presented.” Yet, over one year later, the record is still devoid of any documentation as to where the misappropriated funds have gone. Despite the chancery court’s language in the order, it is apparent from the record that Judge Fairly knew there were unapproved expenditures; he merely wanted Zebert to provide the documentation that would evidence where the funds went. Although Zebert claims nothing further could be gained by another accounting, we observe that appellate counsel for Zebert could not state with certainty that Zebert has provided all the documentation that he has. The fact remains that the only accounting for the period at issue in this case is incomplete and contains evidence of fraud. Zebert admits to being solely responsible for the missing funds; appellate counsel emphatically stated to the Court that Zebert was the “person who took the money and had it at his disposal.” [6]
¶ 14. The dissent notes Zebert has a Fifth Amendment right not to incriminate himself by admitting to the embezzlement of funds. However, Zebert has invoked no such privilege and has not raised as an issue on appeal any deprivation of his constitutional rights. Furthermore, had he wished to invoke this privilege, Zebert should have done so starting with the first order by Judge Grant requesting the overdue accounting. It is generally held that any invocation of the privilege must be made at the outset. “The privilege [against self-incrimination] is not ordinarily self-executing[;3 it must be affirmatively claimed when self-incrimination is threatened, and a defendant may lose its benefit inadvertently, without making a knowing and intelligent waiver, simply by failing to invoke it.” State v. Richard, 697 A.2d 410, 415 (Me.1997) (emphasis added) (citing Minnesota v. Murphy, 465 U.S. 420, 427-28, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984)).[7]
*978 ¶ 15. This Court also finds it a bit disingenuous for Zebert to assert that his incarceration makes it physically impossible to comply. Zebert had hired an attorney, Melissa Gardner Warren, to represent him at his initial “show cause” hearings. Judge Grant entered a continuance, staying Zebert’s incarceration, on August 4, 2011, based on Warren’s request that she be allowed to assist Zebert with preparing the accounting. Yet no explanation has been provided why the accounting was not completed at that time with Warren’s assistance. Rosenthal, counsel for the Appellee and successor guardian to the estate, contends that the request by the chancellor “can be simply done, and would require less than three (3) days to prepare and present the same ... for the Courtfs] review[.]” He also reported during oral argument before this Court, without objection, that he even visited the jail and offered to help Zebert, but was refused.
¶ 16. Although Zebert argues it is necessary that he be released from incarceration to address the pending federal charges against him, we are obliged to respect the chancery court’s role “to act as the superior guardian” to those suffering from disability who are unable to act for themselves. In re Wilhite, 121 So.3d 301, 305 (¶ 11) (Miss.Ct.App.2013) (quoting Carpenter v. Berry, 58 So.3d 1158, 1163 (¶ 19) (Miss.2011)).
The court will take nothing as confessed against them; will make for them every valuable election; will rescue them from faithless guardians, designing strangers, and even from unnatural parents!;] and in general!,] will owwi must take all necessary steps to conserve and protect the best interest of these wards of the court.
Id. at 306 (¶ 11) (emphasis added) (quoting Carpenter, 58 So.3d at 1163 (¶ 19)).
¶ 17. Judge Fairly has aptly summarized Zebert’s continuing unwillingness to provide what the chancery court has requested. At the hearing on September 19, 2011, when Zebert only provided copies of the cheeks to the court, instead of the requested bank statements, Judge Fairly said:
It is just positively clear you’ve been playing games with the court, Mr. Ze-bert. And, you know, you are purposely — I made — I couldn’t have said bank statements — I bet I said it ten times when we were last here in court [on September 8, 2011], because there’s no way I can do a reconciliation of that without the bank statements.
Subsequently, on November 14, 2012, Judge Fairly submitted a response to a *979 motion for writ of habeas corpus filed by Zebert, concluding:
The Court had before it an abundance of evidence to find Zebert in willful and contumacious contempt of Court and ordered him jailed. Zebert committed a fraud upon the Court. He stole Baker’s money. But that is not why he remains in jail. He remains in jail and, to the extent this Court has the power, will remain in jail until he gives the Court a full and complete accounting of all the funds which he wrongfully expended and, since he has failed to account for the money, presumably stolen. He offered no explanation as to where the money went that he transferred electronically to one of his personal accounts. This Court wants to know: Where did the money go? An accounting will reveal that.... Zebert’s incarceration here dealt with his willful disobedience to account for the missing money.
[[Image here]]
In conclusion, this Court is strongly persuaded and continues to conclude that unless and until Zebert purges himself of his contempt, which he can do from the confines of the Rankin County jail by presenting a full and complete accounting of all funds he removed from the Baker account, he should remain in the Rankin County jail.
(Emphasis added).[8]
¶ 18. Consequently, we find nothing to support Zebert’s contention that Judge F airly’s order of contempt was criminal in nature. “[A] valid order of civil contempt does not become punitive simply because the contemnor persists in punishing himself.” United States v. Harris, 582 F.3d 512, 520 (3d Cir.2009). At some point, Zebert’s incarceration for civil contempt may become unhelpful and punitive in nature; however, there is no indication that this stage has yet been reached. See Commodity Futures Trading Comm’n v. Armstrong, 269 F.3d 109, 112 (2d Cir.2001) (A confinement of more than eighteen months for contempt “d[id] not automatically mean that [the] confinement ha[d] lost all realistic possibility of having a coercive effect, but it might well affect the degree of deference to be accorded a trial judge’s determination.”); United States ex rel. Thom v. Jenkins, 760 F.2d 736, 740 (7th Cir.1985) (The contemnor was imprisoned for fifteen months. If after months, or perhaps even years, the contemnor “steadfastly refuse[s] to yield to the coercion of incarceration, the judge would be obligated to release [him] since incarceration would no longer serve the purpose of the civil contempt order[.]”); Anyanwu v. Anyanwu, 339 N.J.Super. 278, 771 A.2d 672, 679-81 (2001) (Since there was no evidence to support the hearing judge’s determination that there was “no substantial likelihood of compliance,” the appellate court reversed the judge’s ruling that con-temnor should be released from incarceration after four years. “No hard and fast rule or fixed period of time defines when coercive commitment becomes punitive, but refusal to comply is in itself insufficient for a finding that the commitment has lost its coercive power.”).
¶ 19. Regarding any personal bias, the chancellor noted that Zebert was actually ordered to be incarcerated by Judge Grant. It was only due to the mercy shown by Judge Grant on July 26, 2011, and August 4, 2011, that he was not incarcerated at that time. The chancery court, *980 as “superior guardian” of Baker’s estate, has not only the authority, but also the responsibility, to rescue Baker from the fraudulent actions of his “faithless guardian” — here, by requiring that guardian, Zebert, to provide all information regarding his management of the estate.
¶ 20. We find this issue is without merit.
II. Whether the failure to issue Ze-bert a summons under Mississippi Rule of Civil Procedure 81 for the July 18, 2012 show-cause hearing was a violation of Zebert’s due-process rights.
¶ 21. Although Zebert was mailed the order to show cause and notice of the hearing on July 18, 2012, the dissent notes Zebert’s argument that the contempt order should be set aside because he failed to receive notice of the show-cause hearing through a Rule 81 summons. Zebert claims that this was a violation of his due-process rights. However, as we have concluded that the contempt was civil in nature, this issue is moot. The Mississippi Supreme Court has held that “[cjnminal-contempt defendants are entitled to notice under Mississippi Rule of Civil Procedure 81(d), which requires service of process.” Corr v. State, 97 So.3d 1211, 1216 (¶ 12) (Miss.2012) (emphasis added) (citing M.R.C.P. 81(d)(2)).
¶ 22. We find Zebert’s Rule 81 argument unpersuasive. Zebert had been dealing with the issue of the defectiveness of his accounting for more than two years. The initial order to show cause was filed on April 8, 2009; the hearing was set for June 1, 2009. Ten continuances were granted at the request of Zebert over the next two years, delaying the show-cause hearing until July 26, 2011. At that hearing, Judge Grant found Zebert in contempt and ordered him incarcerated, but the incarceration was stayed in the hope that Zebert would satisfy the chancery court’s requirements. Judge Grant recused himself shortly thereafter, and a short hearing was held before the new chancellor, Judge Fairly, on September 8, 2011. Zebert assured Judge Fairly that he would provide all remaining documentation on September 19, 2011. However, he failed to do so, and the matter of the accounting and his contempt was continued until the hearing on July 18, 2012. Zebert was well aware of the basis for the hearing; Judge Fairly observed at the hearing: “Mr. Zebert fully knows why we’re here today.” Zebert had already been found in contempt on July 26, 2011. The July 18 order of contempt simply reinstated Judge Grant’s prior order of contempt and lifted the suspension of Ze-bert’s incarceration.
¶ 23. Additionally, Zebert never objected to service of process at the July 18, 2012 hearing. At the show-cause hearing, Zebert casually mentioned that his attorney, Warren, did not get notice, but he never denied that he received notice of the hearing.[9] Zebert also entered an appearance at the hearing; he took advantage of the opportunity to explain and defend his actions to the chancellor. “With regard to a contempt proceeding, the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.” Pearson v. Browning, 106 So.3d 845, 851 (¶ 32) (Miss.Ct.App.2012) (quoting Vincent v. Griffin, 872 So.2d 676, 678 (¶ 6) (Miss.2004)). In Dennis v. Dennis, 824 So.2d 604, 610 (¶ 16) (Miss.2002), the supreme court held that the appellant, who “was given a meaningful opportunity to *981 explain his actions which were the subject of the motion for contempt” and who failed to show “that he was prejudiced in any way by the lack of proper notice,” had waived any claim “of defective service and violation of due process.” (Emphasis added); see also Chasez v. Chasez, 957 So.2d 1031, 1037 (¶ 15) (Miss.Ct.App.2007) (“Any objections to service of process may be waived if a defendant appears in an action without raising the objection in the initial pleadings or attached motions.”) (citation omitted). Consequently, we find no merit to Zebert’s issue of notice under Rule 81.
III. Whether the order of July 19, 2012, rescinded the order of contempt and incarceration at issue on appeal.
¶ 24. Zebert also claims that Judge Fairly’s July 19, 2012 order rescinded the prior order of contempt and incarceration filed the previous day. Thus, he claims that he should be released from incarceration.
¶ 25. The July 19, 2012 order states in part: “ORDERED THAT the prior Order of August 8, 2011, to the extent that it is sealed the order of that date and any prior orders be and the same is hereby rescinded.” We find that this language merely serves to unseal the chancery court’s August 8 order and rescinds all orders prior to that date. The chancery court, in its response to the motion for habeas corpus, confirms our finding, noting: “To argue that the Order of July 19, 2012, rescinded the Order of Contempt and Incarceration entered the day before stretches credulity to its utmost. The Order simply unsealed those Orders previously sealed by Judge Grant.” Accordingly, we find this issue to be without merit.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., CARLTON, MAXWELL AND FAIR, JJ., CONCUR. GRIFFIS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY ISHEE AND ROBERTS, JJ. JAMES, J., NOT PARTICIPATING.

. The record also reflects that check number 1432, dated January 11, 2008, was a disbursement payable to Zebert for $75,000 — the memo line read "Transfer For (Certificate of Deposit].” It .is unclear whether this disbursement corresponds to the loan amount mentioned. There is no record of a certificate of deposit in Zebert's name.

. A memo from First Commercial bank dated September 14, 2011, confirmed the account balance as of July 27, 2011, was $6,554.95. However, the account number listed in the memo is different than the account number for Baker’s guardianship account.

. In July 2008, Zebert wrote two checks payable to himself from the guardianship account, totaling approximately $8,000, for roofing and miscellaneous repair.

. The only issue on appeal concerns the nature of the chancellor’s order of contempt. Zebert admits in his brief that he did not obtain approval from the chancery court for the aforementioned expenditures. Zebert also notes that he has since received a "target letter from the United States Department of Justice" concerning his mismanagement of Baker’s estate. Moreover, counsel for Zebert stated during oral argument before this Court *975 that federal charges were pending against Ze-bert and that he anticipated Zebert will be "convicted by pleading guilty to misappropriation of funds.” Counsel also submitted that Zebert acknowledges that these funds were misappropriated and "is willing to face up to it and admits his guilt.”
On October 8, 2013, a letter was sent to this Court by the Federal Public Defender’s Office of the Northern and Southern Districts of Mississippi, requesting that this Court take into account evidence of the anticipated federal charges against Zebert for the misappropriation of Baker’s funds and vacate Zebert's contempt order. The Appellee has filed a motion to suppress the letter, which this Court has granted as the letter concerns facts that are not only outside the record, but also occurred after the chancery court's ruling in the matter.

. The dissent notes Zebert’s argument that the contempt order should be set aside because he failed to receive proper notice of the show cause hearing through a Rule 81 summons. M.R.C.P. 81 He claims that the lack of a Rule 81 summons violated his due-process rights. "Criminal-contempt defendants are entitled to notice under Mississippi Rule of Civil Procedure 81(d), which requires service of process.” Corr v. State, 97 So.3d 1211, 1216 (¶ 12) (Miss.2012) (citing M.R.C.P. 81(d)(2)).
As will be addressed more fully in section II of this opinion, "the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.” Pearson v. Browning, 106 So.3d 845, 851 (¶ 32) (Miss.Ct.App.2012) (quoting Vincent v. Griffin, 872 So.2d 676, 678 (¶ 6) (Miss.2004)). In Dennis v. Dennis, 824 So.2d 604, 610 (¶ 16) (Miss.2002), the supreme court held that the appellant, who "was given a meaningful opportunity to explain his actions which were tire subject of the motion for contempt" and who failed to show "that he was prejudiced in any way by the lack of proper notice,” had waived any claim "of *977 defective service and violation of due process.” (Emphasis added).
At the hearing, Zebert mentioned that his attorney did not get notice, but he never denied that he received notice of the hearing. Zebert's Rule 81 argument is a matter of form over substance. Zebert had been dealing with the issue of the defectiveness of the accounting for two years. He had already been held in contempt and ordered incarcerated (twice), although his incarceration had been stayed in the hope that he would satisfy the chancery court's requirements. Moreover, Zebert entered an appearance at the hearing; he took advantage of the opportunity to explain and defend his actions to the chancellor.

. According to counsel during oral argument, one of the women who allegedly received the "loans” was investigated and testified that she did not receive the money. Counsel for Ze-bert stated it was apparent that the chancery court determined that the money did not go to anyone but Zebert. The latest accounting to the chancery court, however, represents that secured loans were made to the two women.

. In Richard, the defendant was sued for selling unregistered securities. The State sought a complete accounting. Richard, 697 A.2d at 412. Paul Richard "objected to the accounting only on the ground that it was an inappropriate remedy, without mentioning his Fifth Amendment right.” Id. at 412-13. He failed to provide the appropriate accounting, and the State filed two separate motions for contempt over a six-month period. Id. at 413. After the State filed its second contempt motion, Richard asserted his Fifth Amendment privilege and "declined to provide the ac *978 counting.” Id. After a hearing, the lower court found him to be in contempt and ordered him incarcerated. Richard appealed, claiming that prior to the second motion for contempt, he had no "reasonable apprehension of criminal prosecution.” Id. The Supreme Judicial Court of Maine held:
Given the facts as set forth by the court, we treat this as a finding that Richard first waived his Fifth Amendment rights when he failed to invoke them in response to the State’s requests for an order to provide an accounting, made in its simultaneous motions for a temporary restraining order and a preliminary injunction filed in March 1996. Richard’s argument that he could not have invoked the privilege because he had no reasonable apprehension at that juncture that his submission of an accounting could lead to a criminal prosecution is not persuasive.
Id. at 415 (emphasis added). The Richard court also noted that Richard was notified from early on that he had violated the statute prohibiting the sale of unregistered securities. In this case, Zebert was apparently aware from the outset that a full and proper accounting would make him subject to prosecution.

. Zebert filed a motion for writ of habeas corpus on August 28, 2012, requesting release from custody. The Mississippi Supreme Court denied Zebert's motion on November 19, 2012.

. We also note that the majority of the motions for continuances were filed by Zebert on his own behalf, not by Warren. He was listed in the court filings as fiduciary and attorney.