**STATE of Maine**

**v.**

**William LINSCOTT.**

Supreme Judicial Court of Maine.

Argued Jan. 22, 1987.

Decided Feb. 25, 1987.

James E. Tierney, Atty. Gen., Wayne S. Moss, Asst. Atty. Gen. (orally), Augusta, for plaintiff.

Newcomb & Pyne, Frederick M. Newcomb, III (orally), Rockland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

McKUSICK, Chief Justice.

William Linscott appeals from his conviction of criminal contempt after a jury trial held in the Superior Court (Penobscot County) on June 19, 1986. Linscott, who in January 1986 had been tried and convicted as the accomplice of Joel Fuller for the murder and robbery of Norman Grenier, was charged with criminal contempt when

he refused to testify when called by the State as a witness at the trial of Fuller on March 6, 1986. The previous January Linscott had testified at his own trial about the respective roles that he and Fuller had played in the Grenier crimes. When Linscott in March refused to testify in Fuller's trial, his appeal from his own convictions for murder and robbery was pending.[1]

On his present appeal from his contempt conviction, Linscott contends that the Superior Court erred by ruling that the constitutional privilege against self-incrimination was not available to him when he was called to testify at Fuller's trial. We agree that the Superior Court's ruling was in error. We accordingly vacate Linscott's conviction for criminal contempt.

■ When called by the State as a witness at the March 1986 trial of Fuller for the Grenier murder and robbery, Linscott admitted that he knew Joel Fuller. That answer, however, signaled the end of Linscott's cooperation with the prosecution. When asked "What was Mr. Fuller's part in [the murder and armed robbery of Grenier]?", Linscott responded, "I'm not going to testify...." Linscott stated that his appeal of his conviction for the murder and robbery of Grenier was pending and that he was "in a sense" claiming the Fifth Amendment. After a recess during which the presiding justice telephoned Linscott's counsel appointed in his pending appeal and advised him of the situation, the justice suggested for the second time that Linscott consult counsel. Linscott again rebuffed the suggestion, declaring "I don't need to have him here.... I'm flat out not going to testify. That's that." The justice then ruled that Linscott had waived his right to have counsel present, and the State recommenced direct examination of the witness.

Linscott immediately declared, "I'm not answering any more questions." Queried by the Superior Court justice whether he had "any grounds or privilege not to testify," Linscott stated: "I have an appeal pending. I'm not saying nothing that would jeopardize my appeal. You can take it as a fifth amendment or not...."[2] The presiding justice then ruled: "[S]ince you testified at your trial that you would waive any privilege against open self-incrimination that you might have had, and your appeal to the Law Court[,] unless there is something unique about it[,] would not reinstate your privilege ... once you take the stand and testify that waives your privilege and that is that." The court then charged Linscott with criminal contempt and ordered the charge set for jury trial.

Before his trial on the contempt charge Linscott, now represented by counsel, filed a motion *in limine* contending that he had not waived his right to invoke the Fifth Amendment privilege at Fuller's trial by testifying at his own earlier trial. The motion justice denied that motion and Linscott was convicted of criminal contempt by a Superior Court jury. The court sentenced Linscott to one year in prison, to be served consecutively to the 25–year sentence for murder and 15–year sentence for robbery that he was already serving concurrently.

■ The Fifth Amendment to the United States Constitution declares in part that "No person ... shall be compelled in any criminal case to be a witness against himself." That "guarantee against testimonial compulsion" (*Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951)), is applicable to the states through the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489,

1. On January 28, 1987, the Law Court affirmed Linscott's convictions for murder and robbery. *State v. Linscott*, No. 4329 (Me. Jan. 28, 1987). Notwithstanding the fact his convictions have by now become final, the validity of Linscott's claim of the Fifth Amendment privilege must be judged in the light of the circumstances prevailing in March 1986 when he made that claim.

2. Although Linscott at one point asserted an additional reason for not testifying, namely,

that "[Fuller is] like a brother to me," the Superior Court never questioned Linscott's good faith fear of incriminating himself by testifying. Friendship for Fuller would not by itself have justified Linscott's claim of the Fifth Amendment privilege because that guarantee exists to protect the claimant against incrimination, not a third party. *See Rogers v. United States*, 340 U.S. 367, 371, 71 S.Ct. 438, 440–41, 95 L.Ed. 344 (1951).

12 L.Ed.2d 653 (1964). The privilege against self-incrimination applies to witnesses such as Linscott as it does to defendants, *McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924), and must always "be accorded liberal construction in favor of the right it was intended to secure." *Hoffman v. United States*, 341 U.S. at 486, 71 S.Ct. at 818. As the United States Court of Appeals for the First Circuit has stated:

> To invoke the privilege, it is not necessary that the witness show that his testimony would be certain to subject him to prosecution, or that it will prove the whole crime, unaided by other evidence. It is enough if there is a reasonable possibility of prosecution, and if the testimony, although falling short of proving the crime in its entirety, will tend to a conviction when combined with evidence from other sources. Thus, the privilege covers not only answers that would in themselves support a conviction, but likewise embraces those which would *furnish a link* in the chain of evidence needed to prosecute, or which *might lead* to other evidence that could be used in a criminal prosecution against the witness.

*In re Kave*, 760 F.2d 343, 354 (1st Cir.1985) (citations omitted) (emphasis in original). To support a claim of privilege, however, the testimony "must have a real and appreciable tendency to incriminate the witness, not merely one that is remote or fanciful." *Id.* The task of determining whether the defendant's answers may subject him to a real danger of prosecution for a crime is the responsibility of the court, which must make the determination "on a question-by-question basis." *State v. Robbins*, 318 A.2d 51, 57 (Me.1974).

The standard by which the trial court must determine the merit of each assertion of the privilege is well-established:

> "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because the injurious disclosure could result."

*Id.* at 56–57 (quoting *Hoffman v. United States*, 341 U.S. at 486–87, 71 S.Ct. at 818–19). In assessing the potential danger of inculpation presented by each question, the court "must give the benefit of any reasonable doubt to the person claiming the privilege." *Collett v. Bither*, 262 A.2d 353, 359 (Me.1970). Before denying the privilege to a witness, the court must find that it is " 'perfectly clear, from a careful consideration of all the circumstances in the case … that the answer[s] cannot possibly have such tendency' to incriminate." *Hoffman v. United States*, 341 U.S. at 488, 71 S.Ct. at 819 (quoting *Temple v. Commonwealth*, 75 Va. 892, 898 (1881)).

■ Applying the *Hoffman* test to the facts of the instant case, we conclude that Linscott's invocation of the privilege was justified and that the Superior Court erred in charging him with criminal contempt. First, the Superior Court justice erred as a matter of law in ruling that Linscott's waiver of his Fifth Amendment privilege at his own trial precluded him from claiming the privilege at Fuller's trial. Related closely to the fundamental principle that the Fifth Amendment privilege is to be liberally construed is the nearly universal rule that "a waiver of the Fifth Amendment privilege is limited to the particular proceeding in which the waiver occurs." *United States v. Licavoli*, 604 F.2d 613, 623 (9th Cir.1979). *See* 81 Am.Jur.2d *Witnesses* § 65, at 103 (1976) ("the rule supported by nearly all the authorities is that a person who has waived the privilege of silence in one trial or proceeding is not estopped to assert it as to the same matter in a subsequent trial or proceeding"). Provided that a responsive answer, or an explanation of why the question could not be answered, was potentially incriminating, Linscott was fully entitled to claim the privilege.

■ Second, it is plain as a matter of law that because of the pendency of Linscott's appeal in March 1986 his response to the State's question about Fuller's role in the Grenier murder and robbery would have had an appreciable tendency to incriminate

him. At the time Linscott was put on the stand at Fuller's trial, he still had a chance of prevailing on his own appeal, creating the possibility that he would be subjected to retrial.[3] By answering that question, Linscott would have risked making additional prejudicial disclosures that would be admissible under M.R.Evid. 801(d)(2)(A) at his own retrial. *See Ottomano v. United States*, 468 F.2d 269, 273–74 (1st Cir.1972), *cert. denied*, 409 U.S. 1128, 93 S.Ct. 948, 35 L.Ed.2d 260 (1973) (witness's waiver of Fifth Amendment privilege at his own previous trial did not preclude him from claiming the privilege when called to testify at trial of alleged co-conspirator, at which time witness's motion to vacate his sentence was pending and possibility of a retrial existed). Linscott should not be denied his privilege against self-incrimination here because it is far from "perfectly clear" that his answers could not possibly have tended to incriminate him. *State v. Robbins*, 318 A.2d at 57; *Hoffman v. United States*, 341 U.S. at 488, 71 S.Ct. at 819.

The entry is:

Judgment vacated. Remanded for entry of judgment of acquittal.

All concurring.

---

**3.** Although we rely upon Linscott's pending appeal, we do not suggest that the finality of his conviction by itself would have deprived him of any privilege against additional prejudicial disclosures.