MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2013 ME 2
Docket:       Cum-11-615
Argued:       October 24, 2012
Decided:      January 3, 2013

Panel:        SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and
              JABAR, JJ.

STATE OF MAINE

v.

DAUDOIT BUTSITSI

JABAR, J.

[¶1]  Daudoit Butsitsi appeals from a judgment of conviction entered by the court (*Horton, J.*) following a jury trial for the intentional or knowing murder of his roommate.  17-A M.R.S. § 201(1)(A) (2012).  Butsitsi argues that the trial court erred when it concluded that he waived his Fifth Amendment privilege against self-incrimination and ordered him to answer a question posed by the State on cross-examination.  We affirm the conviction.

I.  BACKGROUND

[¶2]  On the evening of February 10, 2010, a resident of an apartment on Park Avenue in Portland was fatally shot while exiting his building.  Daudoit Butsitsi, a roommate of the victim, was arrested and charged in the murder.  At trial, Butsitsi did not contest the State's allegation that he was the shooter but

2

asserted that he acted in self-defense. Witnesses, including Butsitsi himself, testified to a history of confrontations between Butsitsi and the victim resulting in numerous physical fights. The State offered evidence that Butsitsi killed the victim in retaliation for the earlier fights, though Butsitsi maintained that he fired the gun to protect himself.

[¶3] On the morning of the shooting, Butsitsi and the victim had two separate fistfights: the first in their shared apartment and the second outside in Butsitsi's car. Butsitsi testified that, following the fight in his car, he wanted to return to the apartment to gather his belongings, but he did not feel safe going back without a gun. That evening, Butsitsi went to a friend's house to get a gun. Butsitsi left the friend's house with Moses Okot, who was charged as the getaway driver in the shooting. Twenty minutes later, Okot and Butsitsi happened upon a group of other friends while buying gas at the Gulf Mart on Congress Street. The group informed Okot and Butsitsi that they were on their way back to the apartment to pick up the victim and take him to a club.

[¶4] Nearly fifteen minutes after leaving the Gulf Mart, Butsitsi—carrying the gun and wearing latex gloves—returned to the apartment, found the victim, and shot him multiple times. The State presented evidence that Butsitsi waited outside the apartment building to ambush the victim. Butsitsi testified, however, that he

entered the hallway and fired only after seeing the victim pull something resembling a gun from his pocket.

[¶5]  After being apprised that he had the right to choose whether to remain silent or to testify, Butsitsi chose to take the stand in his own defense at trial.  On cross-examination, the State asked Butsitsi from whom he had obtained the gun on the evening of the shooting.  Butsitsi refused to answer, at first stating "I don't want anybody['s] life to be in danger," and later invoking his Fifth Amendment right against self-incrimination.  Outside the presence of the jury, the trial court noted that the State had communicated off the record that a ballistics analysis matched this particular firearm to one used in what the State called an "unsolved homicide."  The court informed the parties that it would not permit the State to inquire about the provider of the gun if the only rationale for the question was the gun's possible involvement in "other situations."

[¶6]  After Butsitsi refused to answer the State's question, the court determined that Butsitsi had waived his right to invoke the Fifth Amendment.  The court based its determination on Butsitsi's testimony during direct examination, where he stated that he went to a friend's house to obtain a gun after dark on the evening of the shooting.  Butsitsi described how he "begged" for the gun while the friend resisted.  The court determined that Butsitsi waived his Fifth Amendment privilege as to the State's question because he volunteered detailed information

about how he obtained the gun in his direct testimony. The court ordered Butsitsi to answer the question outside the presence of the jury, but Butsitsi persisted in his refusal. Upon calling the jury back into the courtroom, the court instructed the jurors that Butsitsi refused to answer the State's question though he did "not have a right to refuse to answer." The court did not disclose to the jurors that Butsitsi invoked a Fifth Amendment privilege. The court also instructed the jurors that they were permitted to consider Butsitsi's refusal to answer the State's question if they found it relevant in their decision-making. The jury ultimately found Butsitsi guilty of intentional or knowing murder. *See* 17-A M.R.S. § 201(1)(A). The court sentenced him to thirty-eight years' imprisonment and ordered him to pay $2,261 to the Victim's Restitution Fund. Butsitsi timely appealed.

## II. DISCUSSION

[¶7] Butsitsi argues that the trial court erred in concluding that he waived his Fifth Amendment privilege and that the court's instructions prejudiced his defense.

A.    Invocation of the Privilege

[¶8] The Fifth Amendment to the United States Constitution provides, "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Fifth Amendment gives witnesses the privilege of refusing to give self-incriminating testimony. *Hoffman v. United States,*

341 U.S. 479, 486-87 (1951); *State v. Linscott*, 521 A.2d 701, 702-03 (Me. 1987). This federal constitutional right applies to the states through the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 6 (1964); *Linscott*, 521 A.2d at 702-03.

[¶9]  It is for the trial court to determine whether a witness has validly invoked the privilege against self-incrimination. *State v. Robbins*, 318 A.2d 51, 57 (Me. 1974) ("[I]t is the Judge's responsibility to decide . . . whether the witness may invoke the privilege and decline to answer on the grounds of possible self-incrimination."). A witness may invoke the privilege by declining to testify as to certain matters, based on a fear of possible self-incrimination that "'will tend to a conviction when combined with evidence from other sources.'" *Linscott*, 521 A.2d at 703 (quoting *In re Kave*, 760 F.2d 343, 354 (1st Cir. 1985)). We review for an abuse of discretion the trial court's determination of whether a witness has properly invoked the Fifth Amendment privilege. *See United States v. Castro*, 129 F.3d 226, 229 (1st Cir. 1997); *Linscott*, 521 A.2d at 703.

[¶10]  The State did not contest at trial whether Butsitsi properly invoked the Fifth Amendment privilege to protect himself against criminal liability.[1]  The trial

---

[1]  In response to the prosecutor's questions, Butsitsi explained that he refused to answer because he did not want to involve his friend in the legal proceedings.  After properly excusing the jury, the court allowed Butsitsi to discuss his options with his attorney, stating, "[Your attorney] can also make you aware of the consequences for people who refuse to answer questions after being directed to do that by the Court."  The following morning, Butsitsi's attorney reported that Butsitsi "[felt] the necessity to invoke his Fifth Amendment privilege against self-incrimination" because the facts sought through the State's question could form the basis of a separate criminal charge against Butsitsi.

6

court stated: "[W]hat I think I have to give the benefit of the doubt about is that it's possible that the act of obtaining the gun was a criminal act, and if it was, it's an uncharged crime." Although the Fifth Amendment requires "[r]easonable cause on the part of the person questioned to really apprehend danger of prosecution," we defer to the trial court "to decide whether the fear of self-incrimination entertained by the witness or party is real or imaginary." *Collett v. Bither*, 262 A.2d 353, 358-59 (Me. 1970) (citing *Hoffman*, 341 U.S. at 486-87). Though the State did not contest the invocation, the court nonetheless considered the possible criminal repercussions and did not abuse its discretion in determining that Butsitsi actually invoked the Fifth Amendment privilege.

B.     Waiver of the Privilege

[¶11]   When a witness elects to testify to matters covered by a Fifth Amendment privilege, that privilege may be waived. *Brown v. United States*, 356 U.S. 148, 154-56 (1958). In this case, the court gave Butsitsi extensive warnings about the risks of testifying before he took the stand. The court explained to Butsitsi that he was entitled to a presumption of innocence and was not required to present any evidence in his defense. The trial judge asked, "You do understand that if you do take the witness stand and testify you can be questioned or cross-examined by the State's attorney, do you understand that?" Butsitsi indicated that he understood. Finally, the court confirmed, "Mr. Butsitsi, . . . I am

going to assume if you come over to the witness stand and take the oath that you have decided to testify, you have decided to give up your right to remain silent and testify, right?" to which Butsitsi responded, "Okay." Butsitsi elected to take the stand and reveal that he went to a friend's house on the evening of the shooting with Moses Okot because he had heard that the unidentified friend had a gun. When questioned by his own attorney, Butsitsi stated that he had asked the friend to show him the gun and handled it with gloves. Butsitsi also testified that he "begged" the friend to give him the gun, "[a]nd [the friend] was like, no, man, I can't let you use it . . . because [the friend] . . . knew what happened and it was like you might do something crazy."

[¶12] When testifying,

> [a witness] cannot reasonably claim that the Fifth Amendment gives him . . . an immunity from cross-examination on the matters he has himself put in dispute. It would make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell.

*Id.*

> Where an accused party waives his constitutional privilege of silence, takes the stand in his own behalf and makes his own statement, it is clear that the prosecution has a right to cross-examine him upon such statement with the same latitude as would be exercised in the case of an ordinary witness, as to the circumstances connecting him with the alleged crime.

*Fitzpatrick v. United States*, 178 U.S. 304, 315 (1900). To the extent that a witness volunteers information on direct examination, that witness waives the privilege not

just to that information alone, but to all issues and questions relevant to that information: "[T]he breadth of his [Fifth Amendment] waiver is determined by the scope of relevant cross-examination." *Brown*, 356 U.S. at 154-55.

[¶13]  Thus, the issue on appeal is whether the State's question about the source of the gun was within the scope of relevant cross-examination.  "We review the trial court's ruling limiting the scope of cross-examination for abuse of discretion, and will overturn such a ruling only if it has clearly interfered with a defendant's right to a fair trial."  *State v. Day*, 538 A.2d 1166, 1167 (Me. 1988); *see State v. Tremblay*, 2003 ME 47, ¶ 24, 820 A.2d 571.

[¶14]  On cross-examination, the State asked Butsitsi who provided him with the gun used in the shooting.  Butsitsi argues that the identity of that person is collateral to the proceedings because that information does not make it more probable or less probable that Butsitsi committed the crime.  Generally, where the defendant contends that a third party was involved in the crime charged, the identity of that third party is directly relevant and may be sought on cross-examination.  *See, e.g., United States v. Panza*, 612 F.2d 432, 435-37 (9th Cir. 1979) (affirming the determination that the identity of a person who allegedly forced the defendant to commit the crime was directly relevant); *United States v. McKneely*, 69 F.3d 1067, 1075-76 (10th Cir. 1995) (holding that the identity of a provider of drugs may be collateral, but that it was relevant as to the

specific transactions for which the defendant was charged that the defendant attributed to that provider). In *United States v. Montgomery*, a criminal defendant refused to provide the identity of drug suppliers, alleging that the matter was collateral and not relevant to the prosecution's case in chief. 998 F.2d 1468, 1479 (9th Cir. 1993). The United States Court of Appeals for the Ninth Circuit distinguished the facts in *Montgomery* from a prior case where it had held that a *defense witness* enjoyed a Fifth Amendment privilege as to the identity of her drug suppliers where the prosecution sought to impeach the witness's credibility and establish a pattern of seeking cocaine. *Id.* (citing *United States v. Lord*, 711 F.2d 887, 892 (9th Cir. 1983)). In *Montgomery*, however, the prosecution sought to discredit the defendant's entrapment defense. *Id.* at 1479-80. The *Montgomery* court permitted the question, reasoning that where the identity of a third party is "reasonably related to his [affirmative] defense," it is directly relevant to the proceeding and the prosecution may ask the defendant to reveal it. *Id.*

[¶15] Here, the State argued that Butsitsi's state of mind during the hours leading up to the shooting was of critical importance because whether Butsitsi actually believed the victim would use deadly force against him was an integral part of his claim of self-defense. *See* 17-A M.R.S. § 108(2)(A)(1) (2012). The court ruled,

> based upon [Butsitsi's] statement on direct, that the firearm was obtained the same day as the alleged offense, that there is a close enough nexus between the circumstances of the alleged offense and the procuring of the firearm to render [the questions of] how the firearm was procured, from whom it was procured, et cetera . . . relevant.

Had Butsitsi answered the State's question, the State would have been able to probe the truth of Butsitsi's assertion that he had obtained the gun not with the intent to kill the victim, but rather for protection. The identity of the person who provided Butsitsi with the gun was directly relevant because the State could have called that person to the stand in order to test Butsitsi's self-defense theory. *See Montgomery*, 998 F.2d at 1479-80. Therefore, we conclude that the trial court did not abuse its discretion in determining that Butsitsi waived his Fifth Amendment privilege and reasoning that the identity of the person who gave him the gun was relevant and within the scope of his testimony on direct examination.

C.     The Court's Instructions

[¶16]   Following the court's determination that Butsitsi did not have the right to refuse to answer the State's question, the court instructed the jury that it was permitted, but was not obligated, to consider Butsitsi's refusal. Maine Rule of Evidence 512(a) provides: "The claim of a privilege . . . is not a proper subject of comment by judge or counsel in a criminal case. No inference may be drawn therefrom." This rule encompasses two separate types of instructions. First, when

a criminal defendant elects not to testify the court must instruct the jury that "no inference of any kind may be drawn[] from the defendant's choice not to testify," unless the defendant specifically requests that the instruction not be given. Alexander, *Maine Jury Instruction Manual* § 6-8 at 6-15 (4th ed. 2012).[2] *See also* 15 M.R.S. § 1315 (2012); M.R. Evid. 512(a); *Griffin v. California*, 380 U.S. 609, 614 & n.5 (1965). Second, with regard to the self-incrimination privilege, when a criminal defendant makes a claim of privilege, whether valid or invalid, in order to avoid prejudicing the defendant, the court should not inform the jury that the defendant has chosen to exercise a Fifth Amendment right against self-incrimination. M.R. Evid. 512(a); *Robbins*, 318 A.2d at 57 ("It is desirable that a witness'[s] invocation of the privilege before the jury is to be avoided, though it is not per se prejudicial."). Here, the trial court did not improperly comment on Butsitsi's refusal to take the stand because Butsitsi chose to testify, and the court did not inform the jury that Butsitsi invoked the privilege against self-incrimination. Therefore, the court's instruction did not violate Maine Rule of Evidence 512(a).

---

[2] Although the trial court is required to instruct the jury that no inference should be drawn from the defendant's choice not to testify, the defendant may ask the judge not to give this instruction. *State v. White*, 285 A.2d 832, 836 (Me. 1972) ("[T]he practice should be that the Presiding Justice instruct the jury that the failure to testify shall not be taken as evidence of his guilt, unless the defendant specifically, and on the record, requests that the Court not allude to his failure to testify." (quotation marks omitted)).

12

[¶17]  Once a defendant opts to take the stand and testify to a matter and waives the Fifth Amendment privilege, the court may instruct the jury that it can consider the failure of the defendant to rebut or deny evidence.  *Caminetti v. United States*, 242 U.S. 470, 492-95 (1917).  In *Caminetti*, the United States Supreme Court upheld a conviction where the trial court instructed the jury that it "ha[d] a right to take th[e] omission of the defendant into consideration" where the defendant had testified but had omitted substantial details as to his alleged involvement in the crime.  *Id.* at 493.  At trial, the court in *Caminetti* instructed:

> [W]here a defendant elects to go upon the witness-stand and testify, he then subjects himself to the same rule as that applying to any other witness, and if he has failed to deny or explain acts of an incriminating nature . . . such failure may not only be commented upon, but may be considered by the jury with all the other circumstances in reaching their conclusion as to his guilt or innocence . . . .

*Id.*  On appeal, the Supreme Court held that this instruction did not violate the defendant's Fifth Amendment privilege, stating: "The inference was to be drawn from the failure of the accused to meet evidence as to these matters within his own knowledge and as to events in which he was an active participant and fully able to speak when he voluntarily took the stand in his own behalf."  *Id.* at 495.

[¶18]  Similarly, Butsitsi's refusal to answer the State's question was not protected by a privilege.  The court instructed the jury:

> Mr. Butsitsi has advised me that he is refusing to answer any and all questions about the circumstances under which he obtained this firearm despite the fact that I have advised him that he does not have a right to refuse to answer . . . . What I am saying to the jury is you may consider what I have just indicated to you in your decision-making, you are not required to, but . . . I am advising you of it because it is something you can consider. It's for you to decide what to make of that or any other aspect of what is presented here in the courtroom.

We conclude that the court acted within its discretion in instructing the jurors that they could consider Butsitsi's unprivileged refusal to answer the State's question on cross-examination.

The entry is:

> Judgment affirmed.

---

**On the briefs:**

Anthony J. Sineni, III, Esq., Law Offices of Anthony J. Sineni, III, LLC, Portland, for appellant Daudoit Butsitsi

William J. Schneider, Attorney General, and Donald W. Macomber, Asst. Atty. Gen., Augusta, for appellee State of Maine

**At oral argument:**

Anthony J. Sineni, III, Esq., for appellant Daudoit Butsitsi

Donald W. Macomber, Asst. Atty. Gen., for appellee State of Maine