MAINE SUPREME JUDICIAL COURT                                Reporter of Decisions
Decision:    2015 ME 86
Docket:      And-14-308
Argued:      May 13, 2015
Decided:     July 16, 2015

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, <u>JABAR</u>, and HJELM, JJ.

# STATE OF MAINE

v.

# NICHOLAS BEGIN

JABAR, J.

[¶1]  Nicholas Begin appeals from a judgment of conviction of assault on an officer (Class C), 17-A M.R.S. § 752-A(1)(A) (2014); violation of a protective order (Class D), 19-A M.R.S. § 4011(1)(A) (2014); and refusing to submit to arrest (Class D), 17-A M.R.S. § 751-B(1)(B) (2014), entered by the Superior Court (*Warren, J.*) after a jury trial.  Begin contends that the court erred or abused its discretion by (1) admitting testimony about the violent details of a prior unrelated incident, (2) permitting the State to introduce evidence that Begin contacted a witness in violation of a protection order and his bail conditions, (3) excluding from evidence certain recorded telephone conversations after the State introduced limited portions of those recordings, and (4) denying Begin's motion for a mistrial after the State made certain remarks in its opening statement that Begin argues constituted prosecutorial misconduct.  We affirm.

2

## I. BACKGROUND

[¶2]  "Viewing the evidence in the light most favorable to the State, the jury could rationally have found the following facts beyond a reasonable doubt." *State v. Haag*, 2012 ME 94, ¶ 2, 48 A.3d 207.  On April 19, 2013, officer Matthew Vierling of the Lewiston Police Department (LPD) was assigned to serve Nicholas Begin with a protection order identifying an individual named "Ashley" as the protected party and prohibiting Begin from entering Ashley's residence at 227 Bartlett Street.  Before Vierling had served the order, Ashley called the LPD and reported that Begin had been harassing her.  Vierling met Ashley, who told him that he might find Begin at 227 Bartlett Street.  Vierling and Ashley then both went to that address.

[¶3]  As Vierling approached the residence's side door, Begin stepped out. Vierling told Ashley to go wait at the front of the house.  Begin, who seemed agitated, told Vierling to speak with his landlord and tried to hand Vierling his cellular telephone.  Vierling read the protection order aloud and explained that Begin could not go back inside the house.  Begin then turned and ran back inside the house.  Vierling ordered Begin to stop and followed him through the door into the garage that made up the first floor of the building.

[¶4]  As Begin ran up an interior staircase, Vierling grabbed hold of his arm. Begin struck Vierling with his elbow, and Vierling held Begin from behind and

tried to drag him back outside. At one point, Begin appeared to reach for a screwdriver that was on a nearby workbench and Vierling, fearing that Begin would use the screwdriver as a weapon, placed Begin in a chokehold. Begin also pulled at Vierling's handgun, which was in a holster secured to Vierling's waist. Vierling was eventually able to pull Begin outside, and the two continued to struggle until other officers arrived and placed Begin under arrest.

[¶5] Begin was charged with assault on an officer, violation of a protective order, and refusing to submit to arrest.[1] He pleaded not guilty to all charges, and a jury trial commenced on April 17, 2014.

[¶6] Before opening statements, the trial court instructed the jury as to the presumption of innocence and burden of proof, and reminded the jury that "you and you alone are the ultimate decision-makers." Then, in its opening statement, the State said: "This case today is about you. It's about whether you as the jury are going to hold Mr. Begin accountable for violating that protective order, for refusing to submit to arrest and for assaulting a police officer." Begin immediately moved for a mistrial. The court denied the motion, but told Begin's counsel that he could address the issue in his opening.

---

[1] Begin was also charged with a second count of assault on an officer (Class C), 17-A M.R.S. § 752-A(1)(A) (2014); reckless conduct with a dangerous weapon (Class C), 17-A M.R.S. §§ 211(1), 1252(4) (2014); and a second count of violation of a protective order (Class D), 19-A M.R.S. § 4011(1)(A) (2014), all of which were dismissed before trial.

4

[¶7]  In his opening statement, Begin's counsel said: "The things that I tell you and [the State] tell[s] you during opening statements and closing statements [are] not the evidence," and, "You're not allowed to use emotion or sympathy in reaching your decision. . . . Your job is to apply the facts and the law . . . in determining whether Mr. Begin assaulted Mr. Vierling on the day in question." Begin's counsel also stated that, although Vierling could have pursued "alternative means," he "decided to initiate contact" with Begin, and that "what you're going to have to decide . . . is whether or not that initial use of force was justified by . . . Vierling."

[¶8]  During direct examination, Vierling testified that one reason he would not let someone upon whom he was serving a protection order go into a residence unescorted was "[f]or fear that they would obtain a firearm . . . for instance, the Webster Street shooting that we had several years ago."  He did not elaborate on the "Webster Street shooting" at that time.  On cross-examination, Vierling testified that he did not know whether Begin had access to a gun.  He also acknowledged that the person protected by the order, Ashley, was not inside the house when Begin tried to re-enter, and that he was familiar with Maine law and LPD policies regarding the use of nondeadly force by law enforcement.  *See* 17-A M.R.S. § 107(1) (2014).

[¶9]   Then, on redirect, the State asked Vierling about "the Webster Street incident."   The court overruled Begin's subsequent objection "in light of examination," and Vierling testified as follows:

> A number of years ago we had an officer serve a protection order to a gentleman who was cooperative at the time.  The officer went inside the apartment with the gentleman so that [he] could say goodbye to his children.  The plaintiff in the protection order was out front and . . . that gentleman proceeded to pick up a high caliber rifle, aim it out the window, shot her and killed her . . . and then he took his own life with his children there.

Vierling explained that this incident was on his mind during his encounter with Begin.  In light of this testimony Begin again moved for a mistrial, and again the court denied his motion.

[¶10]  During voir dire of Ashley, the State elicited testimony that Begin had met with her several times after the incident in violation of a protection order.  Ashley testified that she and Begin had talked about the case and her testimony and had also reviewed the police reports together.  After voir dire, the court ruled, over Begin's objection, that it would allow the State to elicit testimony that Begin had been in contact with Ashley in violation of a protection order and his bail conditions, as such contact was relevant to both Ashley's and Begin's credibility.  In their later testimonies, Ashley and Begin each admitted to the unlawful contact.

6

[¶11] During direct and cross-examination, Begin testified to the following:

- He did not know about the protection order before Vierling arrived, and he was confused when Vierling showed up with a protection order prohibiting him from being at 227 Bartlett Street.

- When Vierling told him he "couldn't be there," he understood that to mean that once he left the property he could not return.

- He was not angry with Vierling for telling him he could not be at the house.

- He had asked Vierling if he could go inside to get his work clothes, and as soon as he turned around, Vierling began choking him from behind.

- He did not reach for a screwdriver or for Vierling's gun, and he only struggled with Vierling after Vierling began choking him.

[¶12] During its cross-examination of Begin, the State introduced recorded portions of phone calls between Begin and his mother that occurred while Begin was in jail awaiting trial. The substance of the recordings was limited to show that (1) Begin was aware of the protection order before Vierling served him, (2) Begin knew that the order required him to leave the house, and (3) Begin was upset when the order was served.

[¶13] Begin then sought to introduce other portions of those same recordings. After listening to the proffered evidence, the court limited the portions that Begin could introduce to those that tended to place in context what the State had introduced. The court excluded other portions, in which Begin described his account of his altercation with Vierling.

[¶14]   In its closing argument, the State told the members of the jury, "You're here today to decide whose version you believe . . . You should compare these versions, think of what makes sense to you and then find the defendant guilty on all counts."   The court then instructed the jurors that: (1) it was their job to determine the facts from the evidence; (2) the attorneys' opening and closing statements were not evidence; (3) the presumption of innocence is itself sufficient to acquit unless they were satisfied that the State had proven guilt beyond a reasonable doubt; and (4) they would be "doing justice" if they applied the law to the facts in a dispassionate, analytical, and businesslike way.   At Begin's request, the court further instructed that any evidence of other criminal actions or violations of law could only be used for evaluating credibility, and not for proof of Begin's guilt.

[¶15]   The jury found Begin guilty of all three counts and the court sentenced him to four and one-half years' imprisonment with all but fourteen months suspended and a two-year period of probation on the assault on an officer charge, and to concurrent thirty-day jail terms on each of the remaining counts. Begin appeals.

## II. DISCUSSION

[¶16]   We reject and do not discuss further Begin's argument that the court abused its discretion by excluding from evidence the recorded telephone

8

conversations that did not serve to place into context the recordings that the State had introduced. *See* M.R. Evid. 106;[2] *State v. Archer*, 2011 ME 80, ¶ 29, 25 A.3d 103.

[¶17]   We are also unpersuaded by Begin's argument that the court abused its discretion by permitting the State to elicit testimony that Begin had contacted Ashley in violation of a protection order and his bail conditions.  Begin made clear at trial that he did not object to evidence that he and Ashley had contact with each other, during which they discussed the case and her prospective testimony and after which her account of the incident changed.  Instead, Begin argues only that the court erred in allowing evidence that court orders prohibited him from having any contact with Ashley.  From this evidence, however, the jury could conclude that Begin was willing to take exceptional steps to attempt to influence the trial testimony of a potential witness.  The court therefore did not err in concluding that this evidence was probative on issues of witness credibility and bias, nor did it abuse its discretion in determining that the probative value of that evidence was not substantially outweighed by the risk of unfair prejudice.  *See* M.R. Evid. 403.[3]

---

[2]  This rule has since been replaced by Rule 106 of the restyled Maine Rules of Evidence, which took effect on January 1, 2015.

[3]  This rule has since been replaced by Rule 403 of the restyled Maine Rules of Evidence, which took effect on January 1, 2015.

[¶18] We now turn to Begin's remaining arguments: (1) that the court erred by allowing testimony about the details of the "Webster Street incident," and (2) that the court should have granted his motion for a mistrial in light of the State's improper remarks during its opening statement.

A.  The "Webster Street incident"

[¶19] Begin argues that Vierling's testimony about the details of the Webster Street incident was unfairly prejudicial to him. *See* M.R. Evid. 403.

[¶20] "We review a trial court's decision to admit evidence pursuant to Rule 403 for an abuse of discretion." *State v. Norwood*, 2014 ME 97, ¶ 16, 97 A.3d 613. Rule 403 requires the court to determine, first, whether the proffered evidence is relevant, and, second, whether the probative value of the relevant evidence is "'substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Id*. ¶ 17 (quoting M.R. Evid. 403). Unfairly prejudicial evidence is that which has "an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one." *Id*. ¶ 16 (quotation marks omitted).

[¶21] Here, Begin defended the assault charge by arguing that his actions were only in response to Vierling's unjustified use of force. Begin emphasized that Vierling could have taken alternative courses of action, including simply allowing Vierling to go inside the house, but instead chose to initiate the use of

10

physical force against Begin unnecessarily. The jury was thus charged with determining whether Vierling's initial use of force against Begin was reasonable, and the court instructed the jury about the use of force by law enforcement.

[¶22] Pursuant to 17-A M.R.S. § 108(1-A) (2014), a person is not entitled to use nondeadly force against a law enforcement officer who is attempting to effect an arrest, unless the officer uses nondeadly force that is not justified pursuant to 17-A M.R.S. § 107(1). Section 107(1), in turn, authorizes a law enforcement officer to use a reasonable degree of nondeadly force when effecting an arrest, unless the officer knows that the arrest is illegal. Therefore, the reasonableness of the force that Vierling applied in his effort to arrest Begin was material to Begin's claim that he acted in self-defense against Vierling. Because the jury was tasked with determining the reasonableness of Vierling's use of force, the court properly determined that evidence related to Vierling's state of mind was relevant.

[¶23] Significantly, the State did not elicit testimony about the details of the Webster Street shooting during its direct examination of Vierling. During cross-examination, Begin elicited testimony suggesting that Vierling had no reason to believe that Begin had a gun inside the house and that the protected party in this case was not in danger because she was outside on the sidewalk. Then, on redirect, Vierling testified that the Webster Street incident—in which a protected party was murdered outside of her home after a police officer, while in the process of serving

a protection order, allowed the subject to re-enter the home—was on his mind at the time of his encounter with Begin.

[¶24]  The court properly determined that the Webster Street shooting was probative of Vierling's state of mind and his assessment of the dangers presented by Begin re-entering the house.  Although the State could have made the point without getting into the specific details of the Webster Street shooting, the testimony was relevant, Begin opened the door for it, and there is no indication that the jury considered it other than for the limited purpose for which it was offered.  It was not an abuse of the court's discretion to allow this testimony.

B.     Prosecutorial Misconduct

[¶25]  Finally, Begin argues that the court should have granted his motion for a mistrial in light of the State's comment during its opening statement that the jury's role in this case was to hold Begin "accountable."  The State concedes that its remark was improper, but contends that any resulting error was harmless. "Because the trial court has a superior vantage point, we review the denial of a motion for a mistrial for an abuse of discretion . . . [and] will overrule the denial . . . only in the event of exceptionally prejudicial circumstances or prosecutorial bad faith."  *State v. Logan*, 2014 ME 92, ¶ 14, 97 A.3d 121 (quotation marks omitted).

[¶26] "When an objection has been made to a prosecutor's statements at trial, we review to determine whether there was actual misconduct and, if so, whether the trial court's response remedied any prejudice resulting from the misconduct." *State v. Dolloff*, 2012 ME 130, ¶ 32, 58 A.3d 1032 (citation omitted).

[¶27] Here, the State's exhortation that the jury hold Begin "accountable" improperly suggested to the jury that it had a civic duty to convict or that it should consider the broader societal implications of its verdict, and thereby detracted from the jury's actual duty of impartiality. *See United States v. Mandelbaum*, 803 F.2d 42, 43-46 (1st Cir. 1986); *Dolloff*, 2012 ME 130, ¶ 68, 58 A.3d 1032 ("In exhorting the jury to convict, which is not, standing alone, misconduct, references to doing justice by conviction should be avoided."); *State v. Woodard*, 2013 ME 36, ¶¶ 34-36, 68 A.3d 1250 (holding that, in light of our long-standing criticism of "prosecutors' appeals to public perception" or invitations for a jury "to consider possible consequences of their verdict outside the parameters of the record of the case," it was plain error for a prosecutor to urge the jury to "send a message" (quotation marks omitted)). The State's telling the jury that, "This case today is about you" likewise put improper pressure upon the members of the jury and may have created an impression that their only role within the justice system was to convict. *See United States v. Castro-Davis*, 612 F.3d 53, 68 (1st Cir. 2010);

*Wilson v. Sirmons*, 536 F.3d 1064, 1120 (10th Cir. 2008); *United States v. Robertson*, 297 F. App'x 722, 729 (10th Cir. 2008).

[¶28]    However, the trial court remedied any prejudice that may have resulted from the prosecutorial misconduct.  The court allowed Begin to broadly address the issue in his own opening, and Begin did just that.  The court also at several points instructed the members of the jury as to their role, the presumption of innocence and the burden of proof, and that the attorneys' arguments are not evidence.  Based on our review of the trial record, we are satisfied that any prejudice resulting from the prosecutor's improper remarks was adequately remedied by the court's response.

The entry is:

Judgment affirmed.

---

**On the briefs and at oral argument:**

Verne E. Paradie, Jr., Esq., Lewiston, for appellant Nicholas Begin

Andrew P. Matulis, Asst. Dist. Atty., Androscoggin County District Attorney's Office, Auburn, for appellee State of Maine